J-S40026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SOPHIA L. SHAW | : | |
| | : | |
| Appellant | : | No. 554 EDA 2024 |

Appeal from the PCRA Order Entered January 9, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003996-2017

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED JANUARY 30, 2025**

Sophia L. Shaw appeals from the order dismissing her Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. Shaw argues her trial counsel was ineffective and the PCRA court erred in dismissing her petition without holding an evidentiary hearing. We affirm.

The underlying facts, as summarized by the trial court, are as follows.

On June 2, 2017, [Shaw] attempted to flee the police after she got caught trying to falsify a merchandise return at the HomeGoods retail store at 1301 Skippack Pike, Whitpain Township, Montgomery County. [Specifically, i]n the late afternoon of June 2, 2017, Alan Foyle, Jr., the Loss Prevention Training Specialist for the HomeGoods, observed [Shaw] returning high-priced [(approximately $700.00)] merchandise without a receipt to obtain a gift card for the value of the returned merchandise. After [Shaw] completed the initial transaction, she stayed in the HomeGoods store and selected merchandise and presented that merchandise [(valued at approximately $500.00)] for return without a receipt. Once this transaction was completed and [Shaw] received a gift card for the [($500.00)] merchandise she was confronted by Mr. Foyle. Mr. Foyle confiscated the gift

card and [Shaw's] I.D. that she had provided to obtain the gift card. [Shaw] abruptly exited the store and went to her car with Mr. Foyle following behind her. Then Mr. Foyle witnessed [Shaw] place what appeared to be a maxi pad over the license plate to her vehicle. [Shaw] then drove to one of the exits from the parking lot of the shopping center. Because of the heavy traffic on Route 73, [Shaw] was unable to exit the shopping center quickly. [Shaw] drove her vehicle back into the parking lot and went back into the HomeGoods store, thinking that she had left her cell phone at the store. [Shaw] asked Mr. Foyle for her cellphone and he advised her that he did not have her cell phone. At this point the police arrived on the scene.

At or about 4:22 pm on June 2, 2017, Whitpain Township Officers Steve Nickel, Brian Richard and Brian Wilfong attempted to apprehend [Shaw] in the parking lot immediately in front of the HomeGoods store. When she returned into the HomeGoods store, [Shaw] left the engine to her vehicle running. So when the Whitpain police attempted to apprehend [her], unbeknownst to them, the engine to [Shaw's] vehicle was running. Despite multiple commands to stop by Officer Nickel, [Shaw] ran to her Chrysler van. Officers Nickel and Wilfong were at the driver's door of the vehicle and Officer Richard was at the passenger side attempting to push [Shaw] out of the driver's door. As [Shaw] entered her vehicle, she pressed the gas pedal, putting Officers Nickel, Wilfong and Richard at risk of injury as they clung to her and her van. Despite commands to stop and get out of the vehicle, [Shaw], who was committed to fleeing the scene and escaping responsibility for her actions, engaged in activity that put the police officers at risk of serious bodily injury. Officer Wilfong injured his back as he was thrown backwards by the vehicle's movement, while two other officers, Nickel and Richard, were trying to stop [Shaw] and hanging on to either [Shaw] or her vehicle. [Shaw] again accelerated and tried to escape.

Additional police vehicles arrived in the parking lot and were positioned so as to block [Shaw] from driving away from the scene. However, [Shaw] persisted, as she turned the wheel and accelerated. The efforts of Officers Nickel, Richard and Wilfong led to [Shaw's] apprehension and prevented [her] from further endangering innocent civilians who were out that evening.

One of the police vehicles, operated by Officer Wilfong, at the scene of the parking lot was equipped with a dashcam, a camera on the dashboard of the vehicle that allowed the events

to be recorded on video which was played back during the trial. Nothing was left to the imagination of the jury; the dashcam video footage showed the actions taken by [Shaw] to attempt to escape the scene in her vehicle. After [Shaw] was apprehended by the police officers, her car was confiscated and searched. At trial, the Commonwealth and [Shaw] entered into a stipulation that upon searching [Shaw's] vehicle, the police discovered a booster bag in the rear of the vehicle. A booster bag is a device, with tinfoil lined on the inside of the bag, designed to defeat the sensors at retail stores.

*Commonwealth v. Shaw*, No. 1181 EDA 2019, 2021 WL 1853567 at *1-*2 (Pa.Super. filed May 10, 2021) (unpublished mem.) (quoting Trial Court Opinion, 7/18/19, at 1-3).

The jury convicted Shaw of aggravated assault, resisting arrest, attempted theft by deception, disorderly conduct, and three counts of recklessly endangering another person.[1] The court sentenced Shaw to an aggregate of seven years, nine months to 15½ years in prison.

Shaw appealed. We affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Shaw's petition for allowance of appeal. *See Commonwealth v. Shaw*, 285 A.3d 881 (Table) (Pa. 2022).

The following month, Shaw filed a timely *pro se* PCRA petition. The court appointed PCRA counsel, who submitted an amended PCRA petition. In the amended petition, Shaw argued that her trial counsel had incorrectly argued in his opening statement that the jury could not convict her of aggravated assault unless it found she had acted recklessly "under circumstances manifesting extreme indifference to the value of human life." Amended PCRA

_____

[1] *See* 18 Pa.C.S.A. §§ 2702(a)(2), 5104, 901(a) (of 3922(a)), 5503(a)(4), and 2705, respectively.

Pet., 8/11/23, at ¶ 13 (quoting 18 Pa.C.S.A. § 2702(a)(1)). Shaw quoted from counsel's opening statement, in which he said,

> And with regard to aggravated assault, that can't be done here, because it doesn't exist in this case. Aggravated assault is one way, two ways, actually, someone can be guilty of aggravated assault-an attempt to cause serious bodily injury to another or cause such injury intentionally or knowingly. I think counsel just admitted that part doesn't apply or the recklessly, which is what he was talking about. But what he left out was under circumstances manifesting extreme indifference to the value of human life.
>
> So, ladies and gentlemen, recklessness doesn't mean what it means in the lay circumstance. Recklessness is a term of art in law. This is not ordinary recklessness like firing a loading gun in a house where you know twenty people are inside of it. It's all but certain that someone is going to die or someone is going to be seriously hurt. That's the recklessness that's required here. And it is not present. And when you watch the video, you'll see that.

*Id.* at ¶ 12 (quoting N.T., 8/7/18, at 40-41).

Shaw argued that the definition of recklessness that counsel used applies only to subsection (a)(1) of the aggravated assault statute, while the subsection under which she was charged – subsection (a)(2) – required a finding of a lesser *mens rea*: ordinary criminal recklessness.[2] *Id.* at ¶¶ 13-14 (comparing 18 Pa.C.S.A. §§ 2702(a)(1) and 2702(a)(2)). *See Commonwealth v. Hoffman*, 198 A.3d 1112, 1119 (Pa.Super. 2018) (stating a conviction under Section 2702(a)(1) requires more than "ordinary recklessness").

---

[2] Subsection (a)(2) applies when the defendant "recklessly causes serious bodily injury" to enumerated persons, including police officers. *See* 42 Pa.C.S.A. § 2702(a)(2), (c)(1).

Shaw argued her trial counsel "was ineffective because he advised [her] to go to trial under the mistaken belief that the Commonwealth would not be able to prove Aggravated Assault." Amended PCRA Pet. at ¶ 17. Shaw asserted that her counsel had no reasonable basis for mistaking the subsection of aggravated assault with which she had been charged. *Id.* at ¶ 19. She alleged that if it were not for counsel's erroneous advice, she would have accepted the Commonwealth's plea offer and pled guilty. *Id.* at ¶ 20; *see also id.* at ¶ 3. She did not argue that counsel's argument to the jury prejudiced her. Shaw asked the PCRA court to find her trial counsel ineffective, vacate her sentence, and order a new trial. The amended petition did not request an evidentiary hearing, nor include any witness certifications.

The Commonwealth filed an answer. It argued the court should dismiss the petition without a hearing because Shaw failed to identify any witnesses she would call at an evidentiary hearing or provide any witness certifications. Commonwealths' Answer to and Motion to Dismiss Petitioner's Amended Post Conviction Relief Act (PCRA) Petition, 11/3/23, at 10-12 (citing 42 Pa.C.S.A. § 9545(d)(1)(i)-(iii), Pa.R.Crim.P. 902(A)(14), (A)(15), and (D), *Commonwealth v. Brown*, 767 A.2d 576, 583 (Pa.Super. 2001), and *Commonwealth v. Reid*, 99 A.3d 427, 438 (Pa. 2014)).[3] The Commonwealth

---

[3] The Commonwealth also cited two unpublished memorandums, *Commonwealth v. Soto*, 2021 WL 944542 (Pa.Super. filed 3/12/21) (unpublished mem.), and *Commonwealth v. Peoples*, 2020 WL 4883832 (Pa.Super. filed 8/20/20) (unpublished mem.), for their persuasive value.

conceded that if Shaw's amended PCRA petition had conformed to these pleading requirements, "an evidentiary hearing would likely be required for the PCRA court to hear relevant testimony" on "the allegations relating to the advice that trial counsel supposedly provided to petitioner concerning the Commonwealth's plea offer, the strength of the Commonwealth's case, and the likelihood of success at trial." *Id.* at 17. The Commonwealth also recognized that the court could not dismiss the petition for its procedural defects without first providing Shaw with notice and an opportunity to cure those defects. *Id.* at 14 (citing *Commonwealth v. Pander*, 100 A.3d 626, 642 (Pa.Super. 2014) (*en banc*)).[4]

The court provided notice of its intent to dismiss the petition without a hearing "for all the reasons set forth in the Commonwealth's Answer and Motion to Dismiss Petitioner's Amended PCRA Petition[.]" *See* Notice Pursuant to Pa.R.Crim.P. 907(1) of Intention to Dismiss Defendant's Amended Petition Without a Hearing, 11/29/23, at 1.

Shaw did not respond. The court dismissed the petition, and Shaw appealed.

Shaw raises the following issues:

    I.    Did the P.C.R.A. court err in dismissing [Shaw's] amended P.C.R.A. petition without a hearing because the trial record

---

[4] The Commonwealth also argued that Shaw could not establish prejudice because throughout trial, trial counsel argued that Shaw had acted accidentally and not recklessly, which, the Commonwealth maintained, was a reasonable strategy. *See* Commonwealth's Answer at 16. We need not address this argument.

shows that trial counsel was ineffective for arguing that the Commonwealth could not prove aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) when the Commonwealth did not charge [Shaw] under this section of the aggravated assault statute?

II.  Did the amended P.C.R.A. petition make it clear that [Shaw] would be the person who would have testified to the allegations in paragraphs 3, 17, and 20 of the amended P.C.R.A. petition?

Shaw's Br. at 3.

Our review is guided by the following standards.

When reviewing the denial of a PCRA petition, this Court's standard of review is limited to whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error. When reviewing the denial of a PCRA petition without an evidentiary hearing, we determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing. When there are no disputed factual issues, an evidentiary hearing is not required. We review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Hart***, 199 A.3d 475, 481 (Pa.Super. 2018) (cleaned up).

In her first issue, Shaw argues her trial counsel was ineffective for erroneously arguing to the jury that to prove Shaw was guilty of aggravated assault, the Commonwealth needed to establish that she acted with recklessness manifesting extreme indifference to the value of human life. Shaw argues this is a higher *mens rea* than that required to convict her of the subsection of aggravated assault under which she was charged, which only required a finding of ordinary recklessness. She contends counsel could have had no reasonable basis for his alleged mistake. She also argues that she was prejudiced because "the Commonwealth could not establish Aggravated

Assault" and that she rejected the Commonwealth's plea offer based on counsel's advice. Shaw's Br. at 11.

Counsel is presumed effective, and a PCRA petitioner claiming ineffectiveness bears the burden to prove otherwise. *Commonwealth v. Ligon*, 206 A.3d 515, 519 (Pa.Super. 2019). The petitioner must plead and prove each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Id.* (quoting *Commonwealth v. Grove*, 170 A.3d 1127, 1138 (Pa.Super. 2017)).

To the extent Shaw argues counsel's remarks to the jury constitute ineffectiveness, her argument is substantially different than that raised in her amended PCRA petition. In her amended petition, Shaw argued that her decision to reject the plea offer was premised on trial counsel's misunderstanding of the applicable *mens rea*. Shaw did not argue trial counsel's remarks themselves caused her prejudice, and she has therefore waived that issue. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Even if Shaw's amended petition had included this argument, Shaw has failed to explain how trial counsel advising the jury that it could only convict her if it found she had acted with a higher level of recklessness than was required was prejudicial to her, rather than to the Commonwealth. We note

- 8 -

neither the court nor the Commonwealth corrected trial counsel during the opening statement. Trial counsel went on to argue in his closing statement that the jury needed to find Shaw acted recklessly with "[a]n extreme indifference in the value of human life[.]" *See* N.T. 189; *see also id.* at 187, (explaining "recklessly" for purposes of aggravated assault "doesn't mean what we normally think it means," but "means acting in a way that is so beyond the pale that death or serious injury is almost certain to occur").[5] If anything, telling the jury to employ a higher *mens rea* made it more difficult for the Commonwealth to prove Shaw guilty.

Shaw's argument that trial counsel was ineffective for rendering allegedly erroneous advice ties into her second issue. In her second issue, Shaw argues the court erred in dismissing her petition because she had not provided witness certifications. She asserts that she would have been the only person to testify at an evidentiary hearing. She maintains she was the only person who could testify that she "was advised by trial counsel that the Commonwealth could not prove aggravated assault[,] which led [her] to reject the plea offer." Shaw's Br. at 11. Shaw also argues that her allegation in her initial *pro se* PCRA petition that "trial counsel did not properly investigate and communicate," which she certified as true, was "sufficient to establish an evidentiary hearing." *Id.*

_____

[5] The court also referenced a heightened recklessness standard when charging the jury on aggravated assault. *See* N.T. at 222.

Shaw's claims that counsel misadvised her during the pre-trial process regarding the *mens rea* element of the charge of aggravated assault, and that this affected Shaw's decision to go to trial, were factual allegations that she would have had to prove at an evidentiary hearing in order to obtain PCRA relief. **See** 42 Pa.C.S.A. § 9545(d). To obtain an evidentiary hearing, the petitioner must include with the petition "a signed certification as to each intended witness" and provide "the witness's name, address, date of birth and the substance of the proposed testimony." **Brown**, 767 A.2d at 582 (citing 42 Pa.C.S.A. § 9545(d)(1)); **see also** Pa.R.Crim.P. 902(A)(15) (providing that a request for an evidentiary hearing shall include a signed certification as to each intended witness). The failure to comply with this requirement "shall render the proposed witness's testimony inadmissible." 42 Pa.C.S.A. § 9545(d)(1)(iii). Where a petitioner does not provide any certifications, the PCRA court does not abuse its discretion in denying an evidentiary hearing. **Brown**, 767 A.2d at 583. However, "it is improper to affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect." **Pander**, 100 A.3d at 642.

Shaw's arguments that certifications were unnecessary because she was the sole intended witness and because she certified her initial *pro se* petition fail. Shaw's amended petition did not request an evidentiary hearing or certify any proposed witnesses. Moreover, the PCRA court's Rule 907 notice of intent to dismiss alerted Shaw that the lack of witness certifications would subject her to dismissal, but she never attempted to fix the error. Shaw failed to

conform to the pleading requirements, despite having been notified of the opportunity to do so, and the court did not err in deciding the petition without an evidentiary hearing. **Brown**, 767 A.2d at 583.

By failing to respond to the court's notice, Shaw also waived her arguments that she did not need to provide a certification because she was the sole witness and her proposed testimony was included in the allegations in the amended petition, or because she had certified all the allegations contained in her initial, *pro se* petition. She did not advance these arguments before the trial court. **See** Pa.R.A.P. 302(a).

Moreover, to prove counsel ineffective, Shaw was required to prove counsel lacked a reasonable basis for whatever advice he rendered. However, "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." **Commonwealth v. Colavita**, 993 A.2d 874, 895 (Pa. 2010). Shaw apparently did not intend to present counsel's testimony about what advice he gave Shaw, or his trial strategy. Her failure to certify that her trial counsel would testify, and alert the court to the substance of his proposed testimony, was also fatal to her ineffectiveness claim.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/30/2025